985 F.2d 554
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Bobby Weldon BAYSDON, Defendant-Appellant.
 No. 91-5172.
 United States Court of Appeals,
Fourth Circuit.
 Argued: December 4, 1992
Decided: February 5, 1993
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. James C. Fox, Chief District Judge. (CR-90-26-5)
 Edwin Chrisco Walker, Assistant Federal Public Defender, Raleigh, North Carolina, for Appellant.
 Vicki S. Marani, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.
 Elizabeth Manton, Federal Public Defender, Raleigh, North Carolina, for Appellant.
 Margaret P. Currin, United States Attorney, R. Daniel Boyce, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.
 E.D.N.C.
 AFFIRMED.
 Before RUSSELL and WILKINSON, Circuit Judges, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 A jury convicted Bobby Weldon Baysdon of various counterfeiting offenses. In determining Baysdon's offense level for sentencing, the district court departed upwards by three levels because Baysdon possessed a large amount of counterfeiting materials, and because his arrest interrupted his plan to counterfeit even more currency. Baysdon appeals from this determination. Finding no error in the district court's upward departure, we affirm the judgment of the district court.
 
 I.
 
 2
 On January 24, 1990, Baysdon offered George McCoy one thousand dollars to rent McCoy's print shop. Baysdon told McCoy that he was an agent of the Drug Enforcement Administration and that he needed the shop to print secret government documents. McCoy, who was suspicious of Baysdon's intentions, contacted the Drug Enforcement Administration and the United States Secret Service. McCoy agreed to let the Secret Service install surveillance cameras in his shop.
 
 
 3
 On February 13, 1990, Baysdon brought a case of paper and some cans of ink to McCoy's shop. McCoy mixed some dark green ink for Baysdon and instructed him on how to use the printing press. Baysdon's first attempts did not produce an image, but after McCoy corrected his technique Baysdon was able to produce a replica of one side of a hundred dollar bill. The colors on the replica were reversed, however, from how they appear on a genuine bill. McCoy informed Baysdon that the colors were reversed because he had made the aluminum printing plate from a photo positive instead of a photo negative. Baysdon told McCoy that he would return the following Saturday to "re-do everything."
 
 
 4
 Secret Service agents arrested Baysdon as he was leaving the shop. The agents seized the papers with the reversed images of the one hundred dollar bill along with aluminum printing plates with the likeness of the front, back, seal and serial number of the bill. In addition, the agents seized equipment and materials for reproducing bills, including ink and approximately five thousand sheets of paper. A search of Baysdon's car produced negatives of twenty and hundred dollar bills, paper sample booklets, and advertisements for photographic and darkroom equipment. In Baysdon's trailer, agents found commercial photographic and printing equipment; film, fixatives and developer; approximately seventy positive and negative images of one hundred dollar bills; one dollar bills with certain numbers cut out; various colored inks; and two thousand sheets of paper.
 
 
 5
 Baysdon was indicted and convicted of one count of impersonating an officer of the United States, 18 U.S.C. § 912, three counts of making a plate for counterfeiting currency, 18 U.S.C.s 474, three counts of possessing a plate from which counterfeit currency has been printed, 18 U.S.C. § 474, and one count of possessing a counterfeit Federal Reserve note, 18 U.S.C. § 474. The district court sentenced Baysdon to forty-eight months of imprisonment. On appeal, this court affirmed the conviction, but remanded for resentencing because the government conceded that the calculations used in determining the probable or intended loss from the crime were confusing and unclear.
 
 
 6
 At Baysdon's second sentencing hearing, the district court found the face value of the counterfeited money to be $20,800. Based on this finding and Baysdon's possession of counterfeiting materials, the court determined that Baysdon's offense level under the Guidelines was fifteen. The court departed upward by three levels to eighteen, however, because it found that the face value of the counterfeited money did not reflect the seriousness of Baysdon's conduct. The court reasoned that the large amount of materials in Baysdon's possession made it likely that he would have counterfeited a much larger sum if he had not been interrupted when the Secret Service agents arrested him. The court sentenced Baysdon to forty-one months of imprisonment, at the top of his guideline range. Baysdon now appeals from that sentence.
 
 II.
 
 7
 Baysdon contends that the district court abused its discretion by departing upward on the ground that his base offense level did not capture the seriousness of his offense. Baysdon claims that he was an amateur counterfeiter and that his lack of experience made him unlikely to succeed in producing a passable likeness of currency.
 
 
 8
 We do not believe that the district court acted unreasonably in departing upward in determining Baysdon's sentence. When reviewing a departure under the Sentencing Guidelines, we must first determine whether the sentencing court has identified a factor "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." United States v. Hummer, 916 F.2d 186, 192 (4th Cir. 1990) (quoting 18 U.S.C. § 3553(b)). In this case, the court below referred to an Application Note, then in effect, which recognized that "[d]ollar loss often does not fully capture the harmfulness and seriousness of the conduct. In such instances, an upward departure may be warranted." U.S.S.G. § 2F1.1, comment. (n.9(f)) (1990), amended by Amend. 393, U.S.S.G. App. C 221-24 (November 1, 1991).
 
 
 9
 We think that the district court was justified in concluding that the dollar amount of counterfeited currency seized by the Secret Service agents dramatically understated the potential harm of Baysdon's enterprise. If Baysdon had not been interrupted by the Secret Service, the counterfeiting materials in his possession, which included approximately 7,000 sheets of paper, could have yielded upwards of $2.8 million counterfeit dollars. Baysdon planned to return to the printshop to "re-do everything"; even if Baysdon had wasted a large percentage of the materials in perfecting his technique, there remained the definite possibility that he would have circulated a huge sum of counterfeit bills. The district court did not abuse its discretion in departing upward on this basis. Hummer, 916 F.2d at 192.
 
 III.
 
 10
 For the above reasons, the judgment of the district court is AFFIRMED.